UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JACOB McALISTER BELL, SR.** <br> **LA. DOC #442374** <br> **VS.** | **CIVIL ACTION NO. 3:15-cv-2180** <br><br> **SECTION P** <br><br> **JUDGE ROBERT G. JAMES** |
| **LOUISIANA DEPT. OF PUBLIC** <br> **SAFETY & CORRECTIONS, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Jacob McAlister Bell, Sr., proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 30, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Riverbend Detention Center (RDC) and he complains that he was received inadequate medical care for various conditions since 2011 when he was incarcerated at the St. Mary Parish Law Enforcement Center (SMPLEC), and thereafter the Rivers Correctional Center (RCC), and RDC, his present place of confinement; he also complains about copay charges. He sued the DOC, its Secretary, James LeBlanc, the RCC, the RDC, the SMPLEC, "unknown health care providers," RDC's Wardens Johnny Hedgemon and Edward Knight, and "unknown" health care contractors. He prays for an injunction "that would bring prison in line with the Constitutional standards in the delivery of medical care," and for an unspecified amount of money damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

In his original complaint [Doc. 1] plaintiff alleged that his incarceration began on December 9, 2011, at the SMPLEC where he was forced to sleep on the floor for 15-16 months. Prior to his incarceration, various diagnostic tests had been ordered but were not rescheduled once he entered into custody. He claimed that he has been disabled since 1996 with spinal problems and bipolar disorder.

He claimed that the situation was the same upon his transfer to RCC. In addition, while he was incarcerated at RCC his teeth began to rot and he complained "no x-rays before pulling." Again, the various diagnostic tests ordered before his incarceration were not performed.

He claimed that the "problem persist" following his transfer to RDC where there is a "lack of qualified staff," and "access to specialist, basic screening, treatment" have been denied. He complained that he received no evaluation upon intake, no surgeries or physical therapy provided, and medication is inappropriately managed with no "follow up."

In an addendum to paragraph V of the complaint, he alleged that the defendants have failed to comply with Louisiana's Administrative Remedy Procedures and the Administrative Procedure Act and have provided inadequate medical care including physical, mental, and dental all of which have caused pain and suffering, mental anguish, and stress. He complained that he has been limited in his opportunities to be examined by a physician and instead is evaluated by nurses who are not qualified to diagnose or order diagnostic tests. He also complained that he is charged a $10.00 copay fee for sick call and a $5.00 copay for prescription refills.

According to plaintiff this has caused him "unnecessary injury" in violation of the prohibition against cruel and unusual punishment. He complained that he is still in need of some

unspecified surgery which was ordered prior to his incarceration and that he still has rotten teeth which pose a risk of death. [Doc. 1-1, pp. 6-8]

Plaintiff attached to his complaint various exhibits establishing his attempts to exhaust administrative remedies[1] and his lack of success with regard to attempting to litigate a prisoner complaint in the Nineteenth Judicial District Court.[2]

---

[1] See RDC Offender Request Form, 7/30/2014 which complains that plaintiff was examined by a physician only once between April 16, 2014, and July 30, 2014, and that his medical records were not available and despite his request were not forwarded by RCC to RDC. The response by Capt. Russell on July 31, 2014, implied that plaintiff was requesting a transfer to another facility and Russell was not able to accomplish that request. [Doc. 1-1, p. 9]

RDC Offender Request Form, 11/11/2014 which complains about the charges or copays for medical screening and prescription charges for individuals such as plaintiff who suffer from chronic disease. He also complained that the screening process was inadequate. [Doc. 1-1, p.10]

Offender Grievance dated March 19, 2015, complaining of charges and copays for dentist and doctor visits for chronic illness and requesting reimbursement. [Doc. 1-1, p. 11]

RDC Offender Request Form, 3/6/2015 complaining that he was unable to have a dental appointment and that he wanted tests ordered but was told that the dentist had not made his regular visitation to the prison and that the physician would not order further diagnostic tests. [Doc. 1-1, p. 12]

RDC Grievance No. 1339 dated March 26, 2015, and complaining about fees and copays charged by the medical department. [Doc. 1-1, p. 13]

RDC Grievance (Step Two) dated May 4, 2015, and complaining about copays for inmates with chronic conditions. Therein plaintiff admitted to having seen the nurse (Ms. Lena), the doctor (Dr. Lebrija Cha), and the dentist, but not a psychologist. He complained about the failure of the administration to respond to his grievances, failure of health care professionals at SMPLEC and RCC failing to forward his medical records, and the failure to follow through with lab tests and other diagnostic procedures. [Doc. 1-1, pp. 14-17]

RDC Grievance dated March 19, 2015, complaining about copays and charges for prisoners with chronic illness; and for charging for orientation. [Doc. 1-1, pp. 20-21]

[2] See Doc. 1-1, pp. 1-5, 40-42;

3

On September 3, 2015, plaintiff filed another complaint in which he again complained that he was not properly evaluated upon his transfer from RCC to RDC and, that his patient records from the Teche Action Clinic in 2011 were not forwarded to the prison and plaintiff was still not able to obtain the previously ordered tests. He again concluded his complaint with a prayer for injunctive, declaratory, and monetary relief and he requested appointment of counsel. [Doc. 7]

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with <u>deliberate indifference to a substantial risk of serious harm which results in injury</u>. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

Thus, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). His complaints fall far short of alleging facts sufficient to establish deliberate indifference. Carefully read, plaintiff's exhibits, notably his various grievances, indicate that he has in fact been examined by a physician, a dentist, and a nurse on occasion. Plaintiff simply disagrees with the course of treatment that was recommended by these health care professionals.

Further, to the extent that plaintiff complains that he is charged for medical services, such an allegation fails to state a claim for which relief might be afforded. The policy or procedure he complains of is apparently a "copay" policy or fee-for-service program which requires inmates to bear part of the cost of their medical treatment. Courts have found these polices constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy)*; Shapley v. Nevada Bd. of*

*State Prison Comm's*, 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F.Supp. 817 (D.Md.1995) (co-pay policy). *See* also *Hudgins v. DeBruyn*, 922 F.Supp. 144, 151 (S.D.Ind.1996) (prison policy which provided that inmates could obtain over-the-counter medicine at cost from institution commissary or as part of necessary treatment for serious medical condition did not constitute cruel and unusual punishment even though former policy generally provided medication free of charge in conjunction with inmate's use of sick-call process; inmate's serious medical needs would be met whether inmate was indigent or not).

  Simply stated, nothing in the Constitution guarantees inmates the right to be entirely free from costs associated with medical care. *Reynolds*, 128 F.3d, at 175. It is only when necessary medical care is denied to impecunious inmates that the Eighth Amendment is implicated. *See*, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992) (affirming district court finding that statute with no exceptions to the co-payment requirement would be unconstitutional because it would deprive an inmate of meaningful access to medical care); *Johnson*, 885 F.Supp. at 820 (holding statute constitutional "because the policy mandates that no one shall be refused treatment for an inability to pay, [and] the co-pay policy will not result in a denial of care, even for inmates who abuse the system").

  Plaintiff's medical care claims fail to establish deliberate indifference on the part of the defendants and should be dismissed for failing to state a claim for which relief may be granted. His claim concerning copay requirements is likewise without a basis in law and should be

dismissed as frivolous.

### 3. *Appointment of Counsel*

Finally, plaintiff has requested appointment of counsel. [See Doc. 7] Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner,

the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint and an amended complaint both setting forth his cause of action against the named defendants. No special legal knowledge was required of plaintiff. His claims are not necessarily atypical of those often asserted in civil rights litigation and are not complex. Further, the appointment of counsel at this stage of the proceedings would not assist the court in resolving his claims. Finally, plaintiff failed to demonstrate that he attempted to procure counsel on his own behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

### *Order and Recommendation*

Therefore,

Plaintiff's request for counsel [Doc. 7] is **DENIED;** and, further,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, December 7, 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE